**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Todd L.,[1] Plaintiff, v. Frank Bisignano, *Commissioner of Social Security*, Defendant. | Case No. 25-cv-1962-JMB/EMB **REPORT AND RECOMMENDATION** |

---

Plaintiff Todd L. appeals the administrative law judge ("ALJ's") decision finding him not disabled. This matter has been referred to me for a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(a). I've considered the matter based on the parties' briefs. (*See* Pl.'s Br. (Dkt. No. 10); Def.'s Br. (Dkt. No. 12).) *See* Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), R. 5. For the reasons discussed below, I recommend that Plaintiff's request for relief be DENIED and this action be DISMISSED with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any non-governmental parties on orders in Social Security matters.

## I. Factual Background

Todd has a history of mental illness, with a diagnosis of bipolar I disorder, manic episode; ADHD; cannabis use disorder; stimulant use disorder; and antisocial personality disorder. (Administrative Record (Dkt. No. 7) ("A.R.") at 322.)[2] He self-medicated with illicit drugs, including marijuana and methamphetamine. (*Id.* at 47–48.) Todd was arrested around 50 times, often related to his mental health, and reports that he has been fired from every job he's ever held. (*Id.* at 43, 58–59.)

Following two traffic stops in March 2022, Todd exhibited erratic behavior. (A.R. at 361–64.) In a subsequent May 4, 2022 psychological evaluation, Dr. Linda Marshall concluded that Todd met both the "criteria for commitment as a person who poses a risk of harm due to mental illness" and the "criteria for commitment as a chemically dependent person." (*Id.* at 364.) Todd was civilly committed from May 2022 through April 2023, but only received inpatient care from May 2022 through September 12, 2022. (*Id.* at 324–28.)

Todd filed his application for supplemental security income benefits on January 10, 2023, alleging a disability onset date of March 15, 2022. (A.R. at 10.) His claim was denied initially on June 1, 2023, and upon reconsideration

[2] Page citations reference the number on the bottom right of each page of the administrative record rather than the CM/ECF pagination.

on September 6, 2023. (*Id.* at 10–23.) The ALJ held a virtual hearing on April 17, 2024, and issued a report on June 4, 2024. (*Id.*) The ALJ concluded Todd was not disabled, despite having "the following severe impairments: obesity; mixed anxiety and depressive disorder; attention deficit hyperactive disorder; bipolar disorder; posttraumatic stress disorder; anti-social personality disorder; and history of polysubstance use disorder." (*Id.* at 12.)

## II. Legal Standard

An individual is disabled under the Social Security Act if he has not engaged in substantial gainful employment for a twelve-month consecutive period, and "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The regulations interpreting the Act set out a five-step process for an ALJ to determine if a person claiming disability and seeking benefits qualifies as disabled under the Act. Here, the Plaintiff only challenges the ALJ's findings at step three and his determination of Plaintiff's residual functional capacity ("RFC") as a precursor to step four. *See* 20 C.F.R.

§ 404.1520(a)(4)(iii) (discussing 20 C.F.R. pt. 404, subpt. P, app. 1); *id.* § 404.1520(e).

This Court may review an ALJ's finding that an applicant is not disabled. But that review is limited to determining whether the ALJ legally erred, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018), or whether "substantial evidence on the record as a whole" supported the decision, *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *see also* 42 U.S.C. § 405(g). "Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must examine the entire administrative record, including both evidence that detracts from the ALJ's decision and evidence that supports it. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). An action is subject to remand if the ALJ's opinion contains factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008).

But the Court's task is not to reweigh the evidence. *Follett v. Astrue*, CIV 09-3167 MJD/SRN, 2010 WL 4979011, at *7 (D. Minn. Nov. 16, 2010) (citing *Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir.1999)), *report and recommendation adopted,* 2010 WL 4974554 (D. Minn. Dec. 2, 2010). Instead, if the record would permit the Court to draw two different conclusions from the evidence, and one of those conclusions is the same as the ALJ's, the Court must affirm. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

## III. Discussion

### *A. Step Three*

At step three, the claimant must show that he has an impairment or combination of impairments that meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (discussing 20 C.F.R. pt. 404, subpt. P, app. 1).) "If the claimant wins at the third step (a listed impairment), [ ]he must be held disabled, and the case is over." *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003).

Here, the ALJ determined that the "severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, 12.11, and 12.15." (A.R. at 14.) Most important here, listing 12.04 covers depressive, bipolar, and

related disorders, and listing 12.06 relates to anxiety and obsessive-compulsive disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(1).

Todd argues that the ALJ failed to identify the evidence he relied on in reaching his decision and failed to properly consider the impacts of a structured setting, as required by the "paragraph C" criteria of Listings 12.04 and 12.06. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.04(C), 12.06(C). The paragraph C criteria for each listing are identical. *See id.* Paragraph C requires the claimant's mental disorder to be "serious and persistent," meaning the claimant has:

> a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and
>
> 2. Marginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.04(C), 12.06(C) (citations omitted).

In making this determination, the ALJ must assess the claimant's "ability to complete tasks by evaluating all the evidence, . . . with an emphasis on how independently, appropriately, and effectively [the claimant is] able to complete tasks on a sustained basis," 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(C)(6)(c), and "consider the kind and extent of supports" the

claimant receives and "the characteristics of any structured setting in which" the claimant spends his time, and "the effects of any treatment," *id.* § 12.00(D)(1).

There are certain types of support that the ALJ must consider, including "help from family members or other people who monitor [the claimaint's] daily activities and help [him] function." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(D)(1)(a). The ALJ must also consider whether a claimant who lives "alone and do[es] not receive any psychosocial support(s)" has "created a highly structured environment by eliminating all but minimally necessary contact with the world outside [his] living space." *Id.* § 12.00(D)(1)(g); *see also Nowling v. Colvin*, 813 F.3d 1110, 1121–22 (8th Cir. 2016) ("[T]he nature of the medical condition and the nature of the life activities, including such considerations as independence, should be considered against the backdrop of whether such activities actually speak to claimant's ability to hold a job.").

In reaching the conclusion that Plaintiff does not meet the listing criteria for 12.04 or 12.06, the ALJ found "the evidence fails to establish the presence of the 'paragraph C' criteria." (A.R. at 15.) The ALJ specifically found:

> The claimant's mental impairments have not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminished his

> symptoms AND resulted in marginal adjustment, which means minimal capacity to adapt to changes in one's environment or to demands not already a part of one's daily life (see 12.00G2(b) and (c)). The claimant spent various periods in inpatient mental and chemical abuse treatment programs. **Once discharged, as noted above, he could live alone and was able to clean, do laundry, do mild repairs, make simple foods, shop for himself in stores and online, handle finances, manage his own healthcare, and attend AA/NA meetings**. Therefore, the 'paragraph C' criteria are not satisfied.

(*Id.* (emphasis added).) In his opinion, the ALJ acknowledged Todd spent time in jail, inpatient facilities, and other treatment programs. (*Id.* at 15, 17.) Nevertheless, in finding the paragraph C criteria had not been satisfied, the ALJ pointed to Todd's Function Report, concluding he could live alone and manage household tasks, including his own finances and healthcare.[3] (*Id.* at 15 (citing A.R. at 212–219).) Todd also reported that a friend called him to remind him to take his medication. (A.R. at 215.) Later in his opinion, the ALJ summarized Todd's post-discharge statement that he was doing well but suffering from side effects of Lithium. (A.R. at 17.) The ALJ noted that after he was prescribed Depakote, Todd "continued to participate in outpatient mental and chemical abuse treatment," by attending group and

[3] Todd dated this function report February 28, 2022, (*see* A.R. at 219), but it seems very likely that the correct date is February 28, 2023. In the report, Todd mentions taking Depakote, which wasn't prescribed to him until October 2022. (*Id.* at 611.) And the function report is a form issued by the Social Security Administration. Because Todd didn't apply for benefits until January 2023, I assume the report was completed in February 2023–shortly after Todd applied for benefits.

individual counseling with only 3 absences. (*Id.* (citing Exs. 18E; 19E; 4F; 5F; 6F; 8F; 12F; 13F; 14F; 15F; 16F).)

The ALJ summarized other record evidence that Todd "mainly reported he was doing well and maintaining sobriety," that he consistently had "normal" mental status findings, and that "[w]hen discussing reasons for not working with his psychiatrist, the claimant pointed to back issues and wanting to be available for his girls." (A.R. at 19.) Relying on this and other evidence, the ALJ concluded that Todd "has significant psychological issues," but that, "once discharged, he was largely managed with outpatient treatment including sobriety and medication management." (*Id.*)

Despite Todd's civil commitment in 2022–2023, the ALJ's conclusion that he did not require a highly structured environment was supported by substantial evidence. *Cf. Andrew H. S. v. Kijakazi*, 20-CV-1553 (SRN/HB), 2022 WL 409954, at *12 (D. Minn. Jan. 24, 2022) (reaching same conclusion where claimant, who had been incarcerated for 10 years, did not need his mother to monitor his daily activities, help him function, administer his medication, remind him to eat, shop for him, pay his bills, or make sure he was never alone), *report and recommendation adopted*, 2022 WL 409951 (D. Minn. Feb. 10, 2022); *Nicholas C. v. Bisignano*, 25-CV-2287 (LMP/DTS), 2026 WL 1574867, at *4 (D. Minn. May 14, 2026) (finding substantial evidence where claimant was "able to care for himself and manage his own

medications, transportation and finances" and was only "minimally engaged" with comprehensive mental health services and thus rejecting the need for a structured environment), *report and recommendation adopted*, 2026 WL 1559836 (D. Minn. June 2, 2026).

Todd argues that because "the ALJ failed to identify the evidence relied upon in support of a decision that [he] did not meet Paragraph C criteria, this Court cannot determine if the decision is supported by substantial evidence." (Pl.'s Br. at 15.) I disagree. Although the ALJ did not provide a record citation for each sentence in his report, he cited to the Function Report throughout the step three analysis. (A.R. at 14–15.) And the facts stated are readily found in that report, as well as in the medical records and Todd's own testimony. (*Id.*); *see also Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009) (concluding the ALJ's findings were "apparent from the opinion's entirety").

Next, Todd concedes that the ALJ mentioned his time in inpatient treatment, but argues that the ALJ's "brief summation of the thirteen months where [Todd]'s mental health was judicially determined to render him unsafe to live in the public" doesn't sufficiently "recognize the substantial assistance [Todd] required to alleviate the symptoms that led to his commitment in the first place." (Pl.'s Br. at 15.) In support of his position, Todd primarily points to record evidence about the behavior that led to his civil commitment or that occurred during or shortly after that period of

civil commitment. (*See id.* at 14–15.) In contrast, the ALJ focused on Todd's mental health status in the more recent months following his release from inpatient care and civil commitment. As noted above, the ALJ cited plenty of record evidence that Todd was functioning reasonably well in his own home with outpatient mental health services. That the ALJ found the more recent record evidence more persuasive is not for me to re-weigh. *See Harwood,* 186 F.3d at 1042.

Finally, Todd points to his more recent interactions with supervisors as evidence supporting his need for a structured setting. (*See* Pl.'s Br. at 14–15 (citing A.R. at 58, 1152).) But this fact goes more appropriately to a paragraph B analysis of his ability to interact with others rather than a paragraph C analysis related to a structured setting. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(2). And the ALJ considered "difficulty getting along with others including authority figures" and "problems at past jobs getting along with others" in arriving at a moderate limitation in his paragraph B analysis. (A.R. at 14.) Moreover, Plaintiff doesn't challenge the paragraph B analysis.

Because the ALJ's finding that Todd does not satisfy listing 12.04 or 12.06 is amply supported by record evidence, I recommend the Court reject Todd's argument at step three.

### *B. RFC*

Next, Todd argues that the ALJ's determination of Todd's RFC didn't account for the support he requires to function. As a precursor to step four, the ALJ must determine the claimant's RFC—that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations caused by his impairments. 20 C.F.R. § 404.1520(e). The ALJ determines a claimant's RFC based "on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (alteration in original) (quotation omitted).

As the Commissioner points out, Todd's only specific argument is that the ALJ "erred in dismissing Dr. Sathoff's opinion regarding 'marked' limitations in interactions with supervisors." (Pl.'s Br. at 18; *see also* Def.'s Br. at 13–14.) Todd points out that Dr. Sathoff had earlier opined that he had a "moderate" ability to respond appropriately to supervisors, but changed that opinion to "marked" after Todd was "fired from two jobs in rapid succession due to his inability to get along with his supervisor." (*Id.* (citing A.R. 1199 (referencing A.R. 1138, 1152)).)

The ALJ articulated specific reasons for discounting Dr. Sathoff's opinion that Todd had "marked" limitations interacting with supervisors. (*See* A.R. at 1199.) The ALJ explained:

> Dr. Sathoff's second opinion (March 2024) is not persuasive. The majority of findings were the same as in Dr. Sathoff's first opinion. However, he found the claimant had marked limitation in interacting with supervisors. This is not persuasive, as there was some indication the claimant's subjective reporting influenced this finding. Specifically, in his records, Dr. Sathoff noted, "I had dictated a letter for him outlining his psychiatric diagnoses and inability to work. He did not feel that the first letter was adequate, and I did do a second one for him. He was satisfied with that one." (Ex. 17F pg. 24). This statement causes me to question the doctor's objectivity/autonomy of this opinion. The marked finding is also unsupported by Dr. Sathoff's own treatment records, where he consistently noted normal mental status findings, including the claimant's interactions with him. It is also inconsistent with other records that noted the claimant exhibited normal behavior and cooperation (Ex. 2F; 3F; 6F; 7F; 16F; 17F; 20F). Accordingly, this opinion is not persuasive.

(A.R. at 21.) The ALJ supported his specific reasons for declining to accept Dr. Sathoff's "marked" limitation with citations to the medical evidence.

Todd does not challenge the ALJ's decision to discount Dr. Sathoff's objectivity, nor does he explain why the cited evidence is insufficient to support the ALJ's conclusion. Instead, he argues that Dr. Sathoff "knew [Todd] well" and based his opinion "upon his observations of [Todd] and his own treatment notes," and that other evidence in the record supported Dr. Sathoff's conclusion. (Pl.'s Br. at 18.) Even assuming the ALJ could have reached the opposite conclusion on this evidence, that wouldn't warrant remand. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) ("If substantial evidence supports the Commissioner's conclusions, this court does

not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.").

In further support of his argument, Todd cites *Blake R. v. Berryhill*, 0:17-CV-4273-KMM, 2019 WL 1229828 (D. Minn. Mar. 15, 2019). The Court remanded that case because the ALJ's opinion failed to "confront how [the claimant] could be expected to maintain even his reduced functioning reflected in his supportive school and home environments upon encountering the increased stressors of full-time, competitive work where no such support is present." *Id.* at *5. But there, the claimant's school days "were heavily structured and closely supported" and "he obtained significant assistance from his mother in nearly all areas of daily living" at home. *Id.* at *5. As explained above, Todd does not identify a similar need for structure post-discharge.

Because the ALJ's RFC is supported by substantial evidence, I recommend the Court deny Todd's request for remand based on the RFC.

## IV. Conclusion

Based on the parties' briefing and arguments, and for the reasons previously discussed, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's requested relief (Dkt. No. 10) be **DENIED;**
2. The Complaint (Dkt. 1) be DISMISSED with prejudice.

Date: July 31, 2026

*s/Elsa M. Bullard*
ELSA M. BULLARD
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).